Good afternoon, your honors. My name is Barry McWhorter and I have the pleasure of representing Mr. Perez-Rodriguez in this matter. If I may, I'd like to reserve two minutes for rebuttal. The real issue in this case is whether the district court's judge's sentence was substantively reasonable in this matter. He imposed a 24-month sentence when my client's guideline range was 10 to 14 months. He had an offense level of 10. His criminal history category was 2. When the district court imposes a sentence that is above the guidelines, the way I interpret the law, there's really two broad categories that can be utilized to do that. One is what Judge Strange was describing in the decision that was issued about six weeks ago, the voucher decision, what I would describe as the individualized, fact-driven, case-specific analysis where you have to distinguish the case from the mind-run case that falls within the guidelines. And the other is what Judge Clay was describing approximately 10 years ago in the Herrera-Zuniga case when the district court just rejects, on a policy basis, the guidelines. And I think both of those arguably can come into play in this case, or at least for consideration. In our opinion, the policy-based rejection is not the basis for the district court's decision in this case. We think it is an individualized, fact-driven, case-specific decision, but it's not sufficient to take it outside of the mind-run of cases. And the reason why we say that is there's three separate occasions where the district judge explains why he is considering and justifying the upward variance. The first is during the change of plea hearing. After he accepts the change of plea, he advises the parties orally that he is going to consider an upward variance. And during that, he explains why he is considering an upward variance. First thing he says, well, the defendant was initially found in the United States on June 22nd, 2018. Then he was previously removed on two separate occasions. July 5th, he was physically removed on July 5th, and then he returned on July 24th, 2016. Then his second removal was December 24th, 2016. And then he states, I'm not certain whether I will vary upward or not, but it is clear to me that based upon the pattern of returning to the country and to this country illegally after having been previously removed with very short periods or a short period of custody, the question is whether he warrants a sentence above the 8 to 14 month range. So we know from there, what he is looking at primarily is, in this case, that pattern of returning after being ordered removed, or at least that is how he construes it. And what is the mine run case for the number of returns? Well, we know there has to be at least one because it is an illegal reentry case. So by statute, there has to be at least two illegal entries. One is the original illegal entry where the individual comes in, is found here, and then ordered removed, and then they come back in because they have had to reenter, and then they are removed from the country again. So we have at least. That is the lowest level. That is the lowest level. But case law is replete of cases where there is more than that one entry. And it talks about when there is more than one entry. Perhaps you might frame this with an explanation of what is Kimbrough's closer review? How do we do closer review when you have a mine run case and a significant variance? Well, and I believe that is what your Honor was getting at in Boucher, talking about it. And mentioned in Herrera? It is throughout all of these cases. And what you really do is you look at what is going on specifically in that case and how the district judge is explaining how the guidelines don't adequately consider what is going on with that individual in those guidelines. For example, why is the criminal history not sufficient? Because the guidelines, and this is in Boucher, and your Honor talks about how you all looked at it and warned where the district judge had said the reason for the upward variance was just criminal history. And your Honor said, well, no, the guidelines specifically contemplate criminal history. It is sufficiently contemplated. So that is not a sufficient basis for an upward variance. Because it has already been accounted for. That is exactly right. Well, in an illegal reentry case, criminal history is the same way. It is already accounted for. In fact, it is accounted for on both sides of the axis. One, at least in this case, you get the plus four enhancement on the offense level. Plus, he got two points for the criminal history category. If you allow an upward variance then for criminal history, which is what judge says, it is not double counting, it is triple counting for criminal history. It is just unreasonable to allow the same criminal conduct. What do you think of the fact that at least the first reentry happened within weeks? It seemed like Judge Adams took that into account, the quickness of the reentry. I know the second one, it is unclear when exactly because there was a year or a year gap, but it seemed pretty quick on the first one and he took that into account. I understand that upsets everybody, but the reality of the situation is it happens every day now. But is it accounted for in the guidelines? I don't know if the guidelines have any, it doesn't consider the timeline whatsoever. It is the fact that somebody has come in and violated. Wouldn't that be a basis for an upward departure then if it is not accounted for? I mean, wouldn't it be a basis for an upward departure because it is not accounted for in the guidelines, the quickness of the return? I believe it is just the fact that they have reentered is what the guidelines contemplate. The quickness of it I don't think has any bearing on it whatsoever. It should be the fact that they have violated the court order, violated the law. It is just the criminal history again. Counsel, I am wondering if all of the illegal reentries are accounted for here in the guidelines because there would be two criminal convictions for illegal reentry if you include this one, but his first time initially coming into the country before he started getting these convictions would have been illegal as well which would add up by my reckoning to three illegal entries. He has three illegal entries, two illegal reentries. So he crossed the border illegally initially when he came to the United States. Right. So the judge is looking or the guidelines are looking at the reentries, but if the sentencing judge was also aware of the initial illegal entry, the judge seems to be saying that he thinks this fellow is incorrigible and therefore he needs to increase or enhance the time. Every single case that is dealing with an illegal reentry by definition has to have had an illegal entry that the beneficiary moves for. Don't take into account of the initial illegal entry, that is not a reentry, but when he first came in that wasn't legal either. Is that, can the sentencing judge look at the entire history including his first illegal entry when he is deciding the sentence? There is no doubt that the sentencing judge, especially under the 3553 factors, can look at all of the history and characteristics. What we are suggesting though is that that is not a valid basis for an upward variance because or an upward deviation even because the guidelines already contemplate the criminal history and that is criminal behavior entering the country illegally. So because the guidelines already specifically contemplate the criminal behavior and when you are looking at the guidelines, the court is allowed to consider not just convictions, it is also allowed to consider other criminal conduct, it is already considered. And here, if you allow it because he has the four point enhancement for the felony conviction for illegal reentry and he has the two point enhancement for the criminal history points for the criminal history category, he is allowed to do the upward variance itself, it is triple counting for the same conduct. The other thing I think is important to point out is there is no doubt that the judge has very strong feelings about immigration law and how it should be enforced. But he does not use that as a justification for the sentence in this case. Would you, I mean, I would interpret the record to suggest, I agree with you that it was a combination of both and connecting the two, but why wouldn't we say under the totality of the circumstances he had both a policy-based reason and individual circumstances reasons and why wouldn't the combination of the two make it reasonable? And I am curious on your thoughts about whether you think under Kimbrough, which I believe says you are allowed to depart for policy-based reasons, whether his policy-based reasons in this case, do we review that for reasonableness? And if so, do you think it is reasonable? May I get a sip of water? I apologize, I take a medication that dries out my throat. There is no doubt that there is discussion in the record about what can be construed as a policy-based rationale for it. The problem is, is he explains the basis for the upward variance on three separate occasions. Once during the change of plea hearing, he never mentions anything about the policy-based basis there. He does it again during the written notice for the upward variance. Nothing about policy-based variance there. He does it again during the sentencing hearing. And all the way up until the sentence being pronounced, there is virtually nothing about a policy-based justification for the upward variance. There is one line in there that arguably could be construed before the sentence is pronounced that could be arguably a policy-based basis for the upward variance. And it is basically where he is talking about the recurring pattern deserves a harsher sentence. But up until that point, that is the only thing that I think arguably can be construed as a policy basis. It is not until after the Bostic procedure, the Bostic objection is followed that the district judge then explains what I think is probably clearly a policy-based decision at that point. So because of that, it is our position that the basis in this case for the upward variance is not the policy-based basis, although those may be his true feelings. It is not what is part of the record for the justification for the sentence. What is the basis in the record is the individualized analysis. And what he provided for that basis is not sufficient for the upward basis because the driving factor appears to be the criminal history. But if that is true, that would be allowing the district judge to triple count that illegal reentry conviction. Supposing we disagree with you on the policy-based having no bearing in the court's analysis, do you concede that if we take into account you should lose and your only argument here is that it really wasn't a policy-based argument? Do you see what I am saying? If we disagree with you on that procedural question about whether he took these policy considerations into account, do you dispute that they are adequate to justify the enhancement? Just because he is allowed to make a policy-based rejection of the guidelines doesn't mean it is appropriate in every case. It still is subject to a substantive reasonable analysis. So we still have to look at the same factors. Is this a substantively reasonable sentence in this case? And in doing that, we still have to look at many of the same factors, which is a 24-month sentence for a gentleman that only has two convictions. One is the prior illegal reentry and the other is operating a motor vehicle while under the influence. Is a 24-month sentence when his guideline range was 10 to 14 months appropriate? And it is our position that it is just not in this case. I see I am out of time. Could part of the problem here be that the sentencing judge simply didn't provide an adequate explanation for his sentence and how he was applying and balancing the Section 3553A factors? I know that is not part of your brief on appeal, but could that be the real problem here? Well, I don't think he... He attempted to explain it on three separate occasions and he certainly put in the language of what he was justifying it with. He says criminal history, he says history and circumstances, he says the need for adequate deterrence. So he is going through the analysis and then he even gets more case specific. He talks about how he only got the 140-day sentence previously, how that wasn't sufficient. So I think he went through the analysis. I think he explained everything he intended to explain. I just don't think it was sufficient to take it out of the mine run case. All right. Thank you. Thank you, Your Honor. Good afternoon at this point. Good afternoon, Your Honor. Danielle Angeli on behalf of the United States may please the Court. The District Court sentence here of 24 months, a 10-month upward variance from the guidelines range, was substantively reasonable. This Court gives due deference to the District Court's assessment of the 3553A factors. And that applies not only to the District Court's decision about the 3553A factors, the determination of the legitimate correlation between the size of the variance and those factors, but also the reasons given for it and the competing considerations. There are some of the 3553A factors that may have supported the defendant's argument, but there were significant factors that the District Court considered that warranted an upward variance here. Do you agree or disagree with the notion that policy disputes with the guidelines came into play here? Your Honor, I do believe it came into play. The way the District Court reasoned his sentencing, he really grounded it first in the facts and the pattern of the defendant returning into this country, particularly within. He had that 3-week, roughly, period. Then he has a 1326 conviction. And we know, at most, between his last removal and his arrest was a year and a half. So these are pretty short periods of time where the defendant's continuing to come back after having a conviction, after serving some prison sentence. That's really what the Court grounds the sentence in and explains in the variance. However, he does also indicate that there is a strong need to afford adequate deterrence, both specific deterrence to this defendant as well as general deterrence for other individuals who continue to come to this country illegally in violation of the immigration laws. So he indicates some of that before asking the BOSTEC question. I believe it's on page ID 94 and 95. He's explaining how he feels very strongly about this and that when there's a pattern of individuals who are continuing to violate our laws and coming back to the country, that's where it's important to give them a sentence. Not just a slap on the wrist, not just a time-served sentence like the defendant got for his prior 1326 conviction. He explains it's important that they know they're going to serve a period of years, not just months. I'm struggling a little bit with the range here because he got 24 months. We see 300 months, 200 months, all the time. And so 24 months just doesn't sound like a lot of time. But if you look at what's going on in the case, the range was actually 8 to 14 months. So if you take the middle of that range, that's a 118% increase. That's a considerable... I mean, it's double. And I think the other thing that I would like you to address on that is that the court doesn't compare it to the range except for technically. What the court refers to in giving the sentence is the statutory maximum of 10 years in the case and that the guidelines range is just a small percentage of the statutory maximum. Why is it proper to use the statutory maximum penalty as the bookend in making a resolution of a guidelines range? Your Honor, I think there are two ways to address that. First, it's important to note that in many 1326 cases, the statutory maximum is 2 years. Because the defendant had a prior removal for that felony conviction, he's looking at an increased penalty of 10 years. So I think that was part of the court's motivation. That's already accounted for in the guidelines range. Your Honor, the prior conviction was accounted for in the guidelines range both with the four-level increase as well as with the criminal history points that he scored. However, it did not take into account... Those really do not take into account some of the statutory penalties. So the court was looking at... We're looking at 8 to 14 months. He repeatedly says, from the change of plea hearing to the notice that he provides to the actual sentencing hearing, that he just does not think 14 months is sufficient. And when he's explaining why he's giving this variance, he's explaining that he thinks that a term of years is appropriate here to afford adequate deterrence given the defendant's prior pattern. And when he's explaining that, he's saying, I'm giving you 24 months, which is 2 years. I could have given you all the way up to 10. That's what the statute allows me to do. In comparison to that statutory maximum, we're looking at a very small percentage. The guideline range was a very small percentage. He noted it was a tenth of what the statutory maximum was. And additionally, he was trying to explain... I believe he was giving his opinion as to there's a lot more that he... a lot of room that he could have had. And based on the facts of this case and based on the pattern, he thought just a variance of 10 months from the high end of the guideline range was sufficient here. And when we're applying... in your opposing counsel's brief, doesn't it suggest that this case is in the mine run of cases under Kambrogue? Your Honor, we would disagree first because he does have a prior 1326 conviction. And when we look at some of the cases that the defendant cited as well as in our brief, again, the Supreme Court has cautioned us not to use this very fact-specific comparison between case to case because it does change so much. But when we look at some of the cases that we highlighted in our brief, the Lopez-Galvez case, there they were sentenced for 24 months. Notably, that was the statutory maximum in that case. And the guidelines range was much lower. It was two to eight months, so there was a 16-month variance, which is a much higher variance than here compared to both the percentage of the guideline range. And what were the crimes in that case and the number of re-entries? So, Your Honor, he had illegally entered the country four times and had three convictions for either driving under the influence or driving without a license. And those had occurred after re-entry, right? I do believe so, Your Honor. And what we have here is one DUI which was initially before the first re-entry. So he had come in, he has a DUI, and then he has one re-entry, no more DUIs, and then this second one, right? So I'm looking at the comparison. I know it's not exactly right. I'm just struggling with this concept that the Supreme Court has said. You need to look at these cases. If they're mine run, then they ought to be sentenced in the mine run of the guidelines. And if you don't do that, then we ought to be giving them closer review. So what would closer review be when you're giving me cases that have three or four crimes, four re-entries, and there's an increase, and here you have two re-entries and one prior crime. Is there not a distinction there? Isn't this case in the mine run? Your Honor, we would disagree. So he's here, he gets that first removal after having that OVI conviction. He's then removed. Within three weeks, he's coming back. That's a key fact that the district court noted. That's a very short amount of time. Clearly, he was not deterred from coming back into the United States. And when he returns, he also has fake documentation. He's falsely impersonating a U.S. citizen. I believe it was a birth certificate and an ID. So he not only is coming back to the country, but he's coming back to the country with these counterfeit documents trying to indicate that he actually is a U.S. citizen. So that's an important distinction here that we don't always see in these other 1326 cases. He's immediately then processed for the 1326. So he's in custody until December of 2016. So he's really not in the United States at all. Out on the streets, able to do anything. He's in custody for the majority of the time that he's really presently in the country in 2016. We don't have the exact date as to when he returned, but we do know he was arrested on a failure-to-appear warrant for child endangering. So we know that at some point, there was this warrant that was issued for him when he returned to the country, and that was within, at most, a year and a half from his prior removal. So we're looking at somebody who has this pattern of returning to the country some cases just within weeks or within less than two years of a prior removal. And he also is engaging in this criminal conduct. He has this outstanding warrant. He's showing he's not listening to court orders. He's not appearing for court. And he hasn't been deterred by this 1326 conviction. He got a time-served sentence in the last time. That clearly did not deter him from, at most, within a year and a half, coming back into the United States. So all those key factors was what the court was focusing on and saying, you know, this is not your mind-run case. Some of these cases that we looked at, including the Tristan Madrigal case, which was cited both by in our brief as well as in Appellant's brief, that one they were looking at four re-entries over eight years. So here we have, we know two within two years from when he's first removed and when he is removed for the second time and comes back. And then we know that that was his third time coming into the country. We're not sure exactly when he came in the first time. We're not sure exactly when he came in on the third time. But it's a very short period of time. He's a young man. I believe the PSR indicates he's 30 years old or something along those sorts. So there's a very strong need here for a deterrence. And that's what the court was focusing on. And I think that's what establishes it differently from some of the mind-run cases that we might see where maybe they have a prior removal years ago and then they come back, maybe no criminal history other than the immigration offenses. So this one, we do see him here committing crimes and we also see a very short period of time in between his removals despite the judge ordering him removed despite the 1326 conviction he's still coming back. And so those are really the things that the court was emphasizing when he was saying a guideline sentence, 14 months, is just not enough. So he's considering here's what we would have this period within the guidelines range for a mind-run case. Based on this pattern, he's not a mind-run case 14 months is just not enough. And so that's why he buried up to the 24 months. And again, this court provides deference to the district court's determination of those 3553A factors. He wasn't imposing the sentence arbitrarily he wasn't grounding it in impermissible factors. He was considering all the 3553A factors he went through an extensive discussion of the PSR, the defendant's history and characteristics. Is there any discussion of sentencing disparities? Your Honor, he did not explicitly say that, but when he's considering the guidelines range, I think that was him implicitly saying he's looking at the guidelines range which we would which as Your Honor indicated is really where the mind-run cases are. We use that as kind of our benchmark for sentencing. So even though he didn't explicitly say he was discussing disparities or looking at other sentences, I think considering the guidelines range and then rejecting that as not being sufficient was his implicit way of comparing the And again he wasn't he didn't fail to consider relevant factors and he didn't unreasonably weigh a pertinent factor. So when we apply the appropriate deference to what the district court did his determination that a 24 month sentence, 10 months up from the high end of the guidelines range is sufficient but not greater than necessary that was an appropriate discretionary determination. And as Judge Murphy indicated there are policy reasons as well that the judge provided I think he really based it first in the some policy considerations and we see this all the time Does the government have a position on whether those policy based reasons that the immigration laws the sentencing for illegal injury are too lenient? Is that reasonable? Your Honor I think it was and I don't know, I don't think the court was saying the laws itself were too lenient. I think he was saying we need to uphold the law and often times we do see these defendants getting time served sentences which usually a lot of our cases we now have a fast track system so they're in custody for just a few months and then they're removed as soon as the case is over so I think that's what he was getting at with some of the policy concerns was that the guidelines range or these time served sentences just really are not enough to uphold the law Doesn't it have to really be about the guidelines range because it wouldn't justify his upward departure if it was just there's too many people being too lenient going below the guidelines. I think if he thought that was the case then he could have just sentenced within the guidelines range I think the way he's describing it because he sort of conflates the two I believe so he's talking about how a slap on the wrist and a time served sentence is just not enough and that it's important to make sure that we're upholding the law and he indicates he feels very strongly about that we need to uphold the law and that we need to impose a sentence of not just months but years and so I think he's considering the guidelines range and I think in addition to that he's also addressing the fact of the prior sentence where he received the time served sentence which was really just a slap on the wrist so I think he was kind of conflating the two when he was explaining that but he was indicating that the guidelines range itself was not sufficient and that is something that this court should provide deference to and just briefly on that concept of a policy argument our Ortega-Rogel case doesn't it look at the same sort of statement that this is the most disrespectful thing a person can do to the laws which is comparable to this case and commented that if Congress or the Sentencing Commission had felt that was the harsher sanctions so that takes us back into the guidelines which is the choice of the guidelines Yes Sarah and I think we look at the guidelines range but it's also important to note the higher statutory maximum that this defendant was facing so it's not like the court went up to the statutory maximum here I find that a very very troubling argument that I Sarah varied almost 120% but I could have given you 10 years well the guidelines range is selected for a reason and when he had the second re-entry that did move him up in the statutory maximum but that's the ceiling that the legislature said you just can't go beyond this and to bracket that is the appropriate bookend to consider how high above the guidelines you go to me just seems inappropriate I'm out of time if I may just briefly respond so the Supreme Court has the Supreme Court has really indicated that we're looking under substantive reasonableness in the Gall decision they don't require extraordinary circumstances for a variance and they've rejected the court using this rigid mathematical formula looking at percentages of the variance which your honor was referring to I think when we look at the amount it was 10 months in addition to the high end of the guidelines range that was reasonable given the explanation that the court provided both the factual the facts that he noted based on those 3553a factors the important need for deterrence because the defendant had returned so many times in such a short period of time there's a very strong need for deterrence here in addition to the policy arguments that he indicated and for those reasons we would ask that this court affirm the district court's discretionary determination thank you thank you very much your rebuttal thank you your honors my biggest concern is if the district court's justification for sentencing Mr. Perez Rodriguez here is this pattern of committing the same criminal conduct by being removed and re-entering then that would justify an upward departure in the vast majority of federal criminal cases because we have frequently we have repeat offenders in the federal system virtually nobody coming into the federal system is a first time offender so that opens the door for an upward variance in almost every single case the fact that your client came in with a fake ID is that somehow accounted for in the guidelines range you know that's one of the considerations that many of the cases talk about as a justification for the upward variance I don't recall off the top of my head whether the guidelines mention the use of a fake name as a justification for an upward variance I mean as a enhancement for the guidelines I don't believe it does I will tell you as a matter in the real world if somebody is here illegally as a general rule they are using a fake identification they have to in order to be able to work somehow so almost every single case is going to have that so I don't see how that would distinguish it from the normal case that should fall within the guidelines it's almost always going to happen now whether they present it to a law enforcement official when they're being arrested whether law enforcement discovers it that could be a separate issue but as a general rule if somebody is here illegally they're going to have some type of fake identification in order to be able to work Judge Trance asked if there was any discussion about the sentencing disparities there weren't and I think that's particularly important because in the case of Herrera Zuniga the district judge there was talking about and comparison comparing how this particular guideline and this statutory maximum how different it was compared to other guidelines and other statutory maximums and the statutory scheme and how low this guideline range compared to those that's another reason why we don't think this is a rejection of the guidelines themselves that policy based argument just doesn't seem to fit well because he's not looking at it that way he just doesn't like it is the best way I think to describe it it's not a valid analytical analysis of the guidelines of saying it doesn't fit it's just I don't think you give them enough time under the guidelines for that reason we would ask your honors to find it unreasonable and vacate the sentence normally I would ask you to remand to resentence him but if you find it should be a guideline sentence he's very close to the higher limits if not on it so I don't know what your honors can do with that if you can enter a judgment for the high end of the guidelines from this court or instruct the district court to immediately enter a high end judgment but I don't want him to be in jail any longer than he needs to be so however your honors see fit thank you thank you for your argument and the case is submitted Mr. McWhirter I see here you were appointed and accepted this case under the criminal justice act so the court would like to thank you for doing that I know you do that in assistance of justice the court very much appreciates it thank you thank you and clerk may call the next case